

**ORDERED in the Southern District of Florida on August 19, 2016.**

**Robert A. Mark, Judge**
**United States Bankruptcy Court**

---

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| In re: | CASE NO.  15-10322-RAM |
| | CHAPTER   13 |
| AMAURYS RODRIGUEZ and ANAEN NUNEZ, | |
| | |
| | |
| Debtors. | |
| | |

**MEMORANDUM OPINION AND ORDER ON CLAIM OBJECTIONS**

When chapter 13 plans provide for full payment to unsecured creditors, it is not surprising that debtors object to as many unsecured claims as they can. Because many claims are relatively small, creditors often do not file responses or appear at hearings on claims objections. Nevertheless, the Court has the

responsibility to ensure that legitimate claims are not disallowed.

The Debtors in this case objected to three claims based on insufficient documentation even though the Debtors scheduled these debts as undisputed in the amounts claimed by the creditors in their proofs of claim. The Debtors have also objected to eleven other claims because the account summary statement attached to each of these proofs of claim include a notation that the debt was "charged off." As explained in this opinion, the Debtors' grounds for objecting to these claims are not legally sufficient.

## Procedural Background

Amaurys Rodriguez and Anaen Nunez (the "Debtors") filed a joint chapter 13 petition on January 7, 2015. Their Second Amended Chapter 13 Plan [DE# 57] (the "Plan") was confirmed on July 23, 2015 [DE# 65]. The Plan provides for unsecured creditors to receive $164.05 per month for months 25 to 60, but also includes a provision that "[t]he debtors will modify the plan to increase the amounts to be paid to provide for a 100% payment of all allowed unsecured claims" [DE# 57, p. 2].

The Debtors filed three separate Objections to Claims [DE#s 92, 93, and 94] (the "Objections"), objecting to fifteen of the twenty unsecured claims filed in this case. The Debtor objected

to eleven of the claims solely because the proofs of claim noted that these debts were charged-off. The Debtors objected to three other claims alleging not only that these debts were charged-off, but also alleging that the proofs of claim as filed fail to comply with Fed. R. Bankr. P. 3001(c)(1). Only one creditor, eCAST Settlement Corporation ("eCAST"), filed a response to the Debtors' objection to its claim [DE #98]. The eCAST response argues that the charge-off notation in its proof of claim is not a valid basis for disallowing its claim.

After reading eCAST's response, the Court reviewed all three sets of Objections, discovered that most of the objections were based on the charge-off argument, and found it appropriate to schedule a hearing. To that end, on July 5, 2016, the Court entered its Order Setting Hearing on Claim Objections [DE# 111]. That Order scheduled a hearing on July 14, 2016, on the objections asserted in Objections to Claims 92 and 94 and a hearing to reconsider the Court's May 24, 2016 Order sustaining the Debtors' Objections to Claims 3, 4, 17, and 19.[1]

Prior to the July 14th hearing, for obvious strategic purposes, the Debtors withdrew their Objection to Claim No. 11 filed by eCAST, the only creditor to respond to any of the Objections. The focus of the July 14th hearing was the legal

---

[1] The court entered that Order based upon the Debtors' filing of a Certificate of No Response, without review of the legal basis for the objections.

sufficiency of the charge-off objections. No creditors appeared at the July 14th hearing and the Debtors urged the Court to sustain the objections for lack of opposition. The Court declined. In short, the Court concluded that a notation on an account statement that a debt has been charged-off does not affect the enforceability of that claim, particularly in the absence of proof that the creditor has obtained a tax benefit or that the Debtors have suffered a tax burden as a result of the charge-off.

Because of the number of objections at issue, the Court invited Debtors' counsel to submit a post-hearing response identifying claims that were objected to on other grounds. On July 20, 2016, the Debtors filed their Response in Support of Disallowance of Claims (the "Debtors' Response") [DE# 119].

The Debtors' Response withdrew the Debtors' Objection to Claim No. 10 and identified Claim No. 4 as a duplicate of Claim No. 3. The Court agrees that the Objection to Claim No. 4 should be sustained on that basis. The Debtors' Response also argued that the objections to Claim Nos. 5, 6, and 7 filed by Cach, LLC should be sustained because the creditor failed to attach documentation allegedly required by Fed. R. Bankr. P. 3001(c)(2) and (c)(3).

## Discussion

### Debtors' Rule 3001(c) Objections Lack Merit

The Debtors' objections to Claim Nos. 5, 6, and 7 filed by Cach, LLC assert that the claimant did not comply with Fed. R. Bank. P. 3001(c)(1), because the proofs of claim did not attach a copy of the writing upon which the claims are based. The objections note that Rule 3001(c)(1) is not applicable to open-end or revolving consumer credit agreements governed by Rule 3001(c)(3), but allege that the claimant failed to provide proof that its claims are based on open-end or revolving credit agreements.

The Debtors' Rule 3001(c) argument is wrong. Rule 3001(c)(3) does not require a creditor to "prove" that its claim is based on an open-end or revolving consumer credit agreement. It simply requires the creditor to include a statement with its claim that provides the following account information:

> (i) the name of the entity from whom the creditor purchased the account;
> (ii) the name of the entity to whom the debt was owed at the time of an account holder's last transaction on the account
> (iii) the date of an account holder's last transaction;
> (iv) the date of the last payment on the account; and
> (v) the date on which the account was charged to profit and loss

Fed. R. Bankr. P. 3001(c)(3)(A).

5

Cach, LLC attached a Rider to each of its claims that fully complies with these requirements. Therefore, the Debtors have no basis to argue that the creditor failed to comply with Rule 3001(c). Further, the Debtors' objections to Claim Nos. 5, 6, and 7 are not good faith objections because the debts listed in these claims were scheduled as undisputed by the Debtors in amounts (rounded to the nearest dollar) identical to the amounts asserted by the creditor in its proofs of claim.

More than ten years ago, this Court issued its opinion in *In re Moreno*, 341 B.R. 813, 817 (Bankr. S.D. Fla. 2006) ("*Moreno*") holding that the failure to attach sufficient documentation to proofs of claim for credit card debts was not, by itself, a basis for disallowing unsecured credit card claims.[2] Moreover, the Court specifically criticized the tactic of filing an objection to an undisputed scheduled claim stating that "if a debt is scheduled... for an amount equal to or exceeding the amount in the proof of claim, this Court will not tolerate attempts to obtain orders disallowing these claims if the only basis for the objection is lack of documentation. *Moreno*, 341 B.R. at 819. In a later decision from this district, Judge Olson followed *Moreno* and went a step further sanctioning debtor's

---

[2] Rule 3001(c) was amended in 2012 after the Court issued its *Moreno* decision. The Court does not reach the issue of whether failure to attach a Rule 3001(c)(3) statement would be a legally sufficient basis for disallowing a claim because, as noted above, Claims 5, 6 and 7 include the required statement.

counsel for filing objections to scheduled claims based solely on lack of documentation. *In re Velez*, 465 B.R. 912 (Bankr. S.D. Fla. 2012). This Court is not imposing sanctions but Debtors' counsel is admonished not to file similar objections in the future.

<u>Debtors' Charge-Off Objections Are Also Legally Insufficient</u>

As described earlier, several objections are based on notations in the proofs of claim or attachments to the claim that the debts have been charged off. For example, the Statement of Account attached to Claim No. 2 reflects that the debt was charged-off on October 4, 2013. Similarly, the Statements of Accounts attached to Claim Nos. 14, 15, and 16 filed by American Info Source LP, include dates of 10/7/2013, 10/14/2013, and 9/5/2013 under a line item titled "Charge-Off Date." These notations are common to many proofs of claim filed after the 2012 amendments to Rule 3001(c) because Rule 3001(c)(3) requires credit card creditors to file a statement that must include "the date on which the account was charged to profit and loss." Fed. R. Bankr. P. 3001(c)(3)(a)(v).

The Debtor argues that claims based on charged-off debts cannot be enforced, citing to *Discover Bank v. Shimer*, 36 Misc.3d 1214(A), 2012 WL 2912492 (Nassau Dist. Ct. 2012)("*Shimer*"). In that opinion, described as an "Unreported

Disposition," a New York state trial court judge denied a creditor's summary judgment motion because the account statement indicated an internal charge-off. The court noted that a charge-off may have triggered a duty by the creditor to issue an Internal Revenue Service ("IRS") Form 1099-C to the defendant with attendant tax consequences. Because the plaintiff _may_ have obtained a tax benefit and the defendant _may_ have incurred a tax liability, the court denied summary judgment stating that enforcement of the charged-off debt may be inequitable after the creditor received a tax benefit. In _Shimer_, the court found material issues of fact because of possible tax implications and denied a motion for summary judgment. The court's ruling provides no guidance in evaluating the legal sufficiency of claim objections in bankruptcy cases.

The Debtors only cited to _Shimer_ for support of their argument, but the Court undertook its own review of the case law and found a split of authority on whether creditors may enforce debts after issuing a Form 1099-C to an account debtor. Some bankruptcy courts have sustained objections on this basis. _See, e.g., In re Reed_, 492 B.R. 261 (Bankr. E.D. Tenn. 2013) (disallowing a mortgage lender's deficiency claim because the lender issued a Form 1099-C reflecting cancellation or discharge of the debt); _In re Welsh_, 2006 WL 3859233 (Bankr. E.D. Pa. Oct.

27, 2006) (disallowing a claim where the creditor issued a Form 1099-C and the debtors listed the amount of cancelled debt as "other income" on their Form 1040 income tax returns).

Other courts have concluded that a Form 1099-C, standing alone, is not sufficient evidence that a debt has been cancelled. *See, e.g.*, *FDIC v. Cashion*, 720 F.3d 169, 180 (4th Cir. 2013); *Mennes v. Capital One, N.A.*, 2014 WL 1767079 at *3-4 (W.D. Wisc. May 5, 2014); *Atchison v. Hiway Fed. Credit Union*, 2013 WL 1175020 at *3 (D. Minn. Mar. 20, 2013). These cases rely, in part, on an Information Letter dated December 30, 2005 issued by the IRS which states that "[t]he Internal Revenue Service does not view a Form 1099-C as an admission by the creditor that it has discharged the debt and can no longer pursue collection."   IRS Info 2005-0207, 2005 WL 3561135 (Dec. 30, 2005).

This Court does not need to decide whether the issuance of a Form 1099-C would provide a basis to disallow a claim.   In bankruptcy cases, a proof of claim is allowed unless a party in interest objects. *Moreno*, 341 B.R. at 813. In this case, upon objection, the Debtors had the burden "to produce sufficient evidence to negate the *prima facie* validity of the filed claim." *In re Allegheny International, Inc.*, 954 F.2d 167, 173 (3rd Cir. 1992).

The Debtors have not met their burden.  Even if the Court followed the decisions disallowing claims where the debtor received a Form 1099-C reflecting the cancellation of the debt, the Debtors did not present evidence that they received a Form 1099-C for any of the debts subject of the charge-off objections. Therefore, the proofs of claim remain unrebutted and the claims will be allowed. *See In re Diaconx Corp.*, 69 B.R. 333 (Bankr. E.D. Pa. 1987) (holding that the "unilateral action of a bank's accounting department in writing off a debt as uncollectible internally on its books" did not preclude enforcement of the obligation).

In sum, the mere fact that a proof of claim includes reference to a charge-off date is not, standing alone, a legal basis for a claim objection. Based upon the foregoing, it is –

**ORDERED** as follows:

1.    This Court's May 2, 2016 Order on Debtors' Objection to Claim [DE# 105] disallowing Claim Nos. 3, 4, 17, and 19, is vacated.

2.    Claim No. 3 filed by Admin Recovery, LLC has been resolved by the Court's Agreed Order Sustaining Objection to Claim No. 3 [DE# 122].

3.    Claim No. 4 filed by Admin Recovery LLC is disallowed as a duplicate claim.

4.   The Debtors' Objection to Claim No. 11 filed by eCast Settlement Corporation, included in Objection to Claim [DE# 93] has been withdrawn [DE# 118], and Claim No. 11 is allowed as an unsecured claim in the amount of $5,954.21.

5.   The Debtors' Response withdraws the Objection to Claim No. 10, filed by Cavalry SPV I, LLC which was included in Debtors' Objection to Claim [DE# 92].   Therefore, Claim No. 10 is allowed as an unsecured claim in the amount of $680.06.

6.   The Debtors' objections to Claim Nos. 5, 6, and 7 filed by Cach, LLC, included in Debtors' Objection to Claim {DE# 94], are overruled.   Therefore, Claim No. 5 is allowed as an unsecured claim in the amount of $2,290.18, Claim No. 6 is allowed as an unsecured claim in the amount of $2,860.75 and Claim No. 7 is allowed as an unsecured claim in the amount of $5,768.25.

7.   With respect to the remaining objections in Debtors' Objection to Claim [DE# 92], the objections to Claim No. 2 filed by DSN for Macys and Claim Nos. 14, 15, and 16, filed by American Infosource LP, are overruled and these claims are allowed as unsecured claims in the following amounts asserted in the claims:

```
Claim No. 2   -      $ 1,237.25
Claim No. 14  -      $ 6,276.21
Claim No. 15  -      $ 3,340.60
Claim No. 16  -      $ 1,178.26
```

8.   With respect to the remaining objections in Debtors' Objection to Claim [DE# 93], the objection to Claim No. 17 filed by Atlantic Credit & Fin. and objection to Claim No. 19 filed by Ashley Funding Svcs are overruled.  Claim No. 17 is allowed as an unsecured claim in the amount of $2,285.98 and Claim No. 19 is allowed as an unsecured claim in the amount of $2,2992.30.

9.   With respect to the remaining objections in Debtors' Objection to Claim [DE# 94], Debtors' objections to Claim Nos. 12 and 13 filed by Bank of America, N.A., are overruled.  Claim No. 12 is allowed as an unsecured claim in the amount of $1,601.50 and Claim No. 13 is allowed as an unsecured claim in the amount of $2,984.81.

10.  The Debtors shall file a motion to modify their confirmed plan to provide sufficient funding to pay in full the claims allowed by this Order or, alternately, file a motion to modify seeking authority to remove the provision in their confirmed plan providing for payment of 100% of all allowed unsecured claims.

###

COPIES TO:

Kenneth S. Abrams, Esq.
9300 SW 87th Ave., Suite No. 5
Miami, FL  33176
(Debtor's counsel)

Nancy K. Neidich, Chapter 13 Trustee
P.O. Box 279806
Miramar, FL  33027

**Attorney Abrams is directed to serve a copy of this Order on each of the creditors who filed claims that are adjudicated in this Order and on all other interested parties and directed further to file a Certificate of Service.**